UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GANDER MOUNTAIN COMPANY, | Civil No. 06-2857 (PJS/RLE) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER |
| CABELA'S, INC., | |
| Defendant. | |

Dudley W. Von Holt, THOMPSON COBURN LLP, One US Bank Plaza, St. Louis, MO 63101; John Edward Connelly, FAEGRE & BENSON LLP, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for plaintiff.

Michael C. Cox, Daniel J. Fisher, KOLEY JESSEN PC, 1125 South 103rd Street, Suite 800, Omaha, NE 68124; John D. Sear, George W. Soule, BOWMAN & BROOKE, 150 South Fifth Street, Suite 2600, Minneapolis, MN 55402, for defendant.

Plaintiff Gander Mountain Company moves for a temporary restraining order ("TRO") or a preliminary injunction against defendant Cabela's, Inc. ("Cabela's"). For the reasons set forth below, the motion is denied.

The background of this case is fully described in Judge Richard Kyle's order in a related case. *See Gander Mountain Company v. Cabela's, Inc.*, No. 04-3125, 2005 WL 1995499 (D. Minn. Aug. 18, 2005). The following highly abbreviated summary will suffice for current purposes.

In 1996, Gander Mountain Company's predecessor[1] and Cabela's entered into an agreement that, among many other things, gave Cabela's the right to purchase perpetual, exclusive licenses to certain of Gander Mountain's trademarks in the event that Gander Mountain "engaged in active steps to reenter the Direct Marketing Business." Lindahl Decl. Ex. K ¶ 3. The parties refer to this agreement as the "Contingent Trademark License." Gander Mountain does not dispute that it has "engaged in active steps to reenter the Direct Marking Business" for purposes of the Contingent Trademark License, thus triggering Cabela's contractual right to purchase a license to the trademarks. *Gander Mountain*, 2005 WL 1995499, at *3. Instead, Gander Mountain contends, in this and the related case, that the Contingent Trademark License is unenforceable.

Earlier this year, Gander Mountain authorized another company, Camping World, to use one of its marks, which it calls its "Guide Series" design mark. Camping World began using the mark on its Internet site in early June. Cabela's sent a letter to Camping World on June 8 demanding that Camping World stop using the mark. Lindahl Decl. Ex. F. Cabela's contends that the "Guide Series" mark is confusingly similar to one of the marks that is the subject of the Contingent Trademark License. Camping World thereafter deleted the design mark from its Internet site, but retains the Guide Series word mark, and continues to sell Gander Mountain products.

Gander Mountain has also been developing a series of television programs, entitled "Gander Mountain Lodge," that will offer Gander Mountain products for sale. The first program was scheduled to be broadcast on September 25. On September 1, Cabela's sent a letter to

---

[1]The Court will refer to Gander Mountain Company and its predecessor as "Gander Mountain."

Turner Media Group ("Turner"), the company that was to broadcast the programs, informing Turner that Cabela's asserts rights to certain trademarks under the Contingent Trademark License, including the word mark "GANDER MOUNTAIN."  Cabela's also made clear that it would consider any use of these marks to be willful infringement.  Lindahl Decl. Ex. G.  Turner then informed Gander Mountain that it is unwilling to proceed with the Gander Mountain Lodge series in its current form because the programs use trademarks to which Cabela's claims rights.  Gander Mountain now seeks a TRO or preliminary injunction restraining Cabela's from sending similar cease-and-desist letters in the future.

### A.  Standard of Review

There are four factors that a court must consider in deciding whether to grant a TRO or a preliminary injunction:  (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on the other litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  In balancing the equities, no single factor is determinative.  *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630 (8th Cir. 1991).  A complete failure to show irreparable harm, however, is sufficient reason to deny a preliminary injunction. *Blue Moon Entm't, LLC v. City of Bates City*, 441 F.3d 561, 564 (8th Cir. 2006).

TROs and preliminary injunctions are extraordinary remedies, and the party seeking such relief bears the burden of establishing all of the *Dataphase* factors.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).   The burden is particularly heavy where, as here, the moving party seeks not to maintain the status quo, but to gain relief similar to that which it would obtain

after a trial on the merits.  *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993).

### B.  *Threat of Irreparable Harm*

Gander Mountain relies primarily on case law indicating that infringing use of another's mark creates a strong presumption of irreparable harm.  *See, e.g., Coca-Cola Co. v. Purdy*, 382 F.3d 774, 788-89 (8th Cir. 2004) (defendant's use of internet domain names confusingly similar to plaintiffs' marks created presumption of irreparable harm); *Franklin Mint, Inc. v. Franklin Mint, Ltd.*, 331 F. Supp. 827, 830 (E.D. Pa. 1971) (infringing use of plaintiff's mark damaged plaintiff's goodwill and deprived plaintiff of the ability to control the nature and quality of its goods).  But those cases are distinguishable from the present case.  Gander Mountain does not assert that Cabela's is infringing its trademarks (at least for the purposes of this motion).  Rather, Gander Mountain objects that Cabela's is asserting rights to Gander Mountain marks that Cabela's does not yet have.  A presumption of irreparable harm is not warranted in this case.

Gander Mountain has made no other showing that it is threatened with harm that is irreparable.  Camping World did remove Gander Mountain's design mark from its web site, but it continues to sell Gander Mountain products.  The record contains only speculation, not evidence, that Gander Mountain has been harmed as a result.  *See Guy Carpenter & Co. v. John B. Collins Assocs., Inc.*, 179 Fed. App'x 982, 983 (8th Cir. 2006) (citing *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir. 1979)) (speculative damages do not justify preliminary injunctive relief).  As for the planned "Gander Mountain Lodge" series, the primary harm that Gander Mountain cites is lost sales, which are compensable with money damages.  *Cf. Cargo Protectors, Inc. v. Am. Lock Co.*, 92 F. Supp. 2d

926, 935 (D. Minn. 2000) (money damages adequate to compensate for plaintiff's lost sales). It may be somewhat difficult for Gander Mountain to quantify those damages, but the Court is not persuaded, on this record, that the task will be impossible.

Finally, the timing of Gander Mountain's motion belies its contention that it is threatened with irreparable harm. The Contingent Trademark License has been the subject of litigation between the parties for over two years. It could not have come as much of a surprise to Gander Mountain when Cabela's sent the June letter to Camping World asserting rights to trademarks that are the subject of that license. Even after the letter was sent, Gander Mountain did not seek judicial relief.

The Gander Mountain Lodge program has been in development for months. Lindahl Decl. ¶ 17. Gander Mountain could easily have predicted that Cabela's would object to it. Yet Gander Mountain chose to wait until just a couple of weeks before the first scheduled airing to bring this motion, and simultaneously brought a motion to amend its complaint, thus forcing Cabela's to respond to two complex motions in an extremely short amount of time. A cynic might suspect that Gander Mountain is playing games to force a quick ruling in its favor, rather than trying to protect itself from irreparable harm.

### C. Likelihood of Success on the Merits

Gander Mountain asserts two claims against Cabela's: tortious interference with a business relationship and unfair competition under the Lanham Act, 15 U.S.C. § 1125.[2] The

---

[2] Gander Mountain also attempts to rely on a claim under the Minnesota Deceptive Trade Practices Act, but it has not yet properly amended its complaint to assert such a claim and that claim is therefore not before the Court.

crux of Gander Mountain's argument is that, under Wisconsin law,[3] the Contingent Trademark License is an unenforceable agreement to agree.  *See Dunlop v. Laitsch*, 113 N.W.2d 551, 554 (Wis. 1962).  Cabela's has a good argument, though, that the parties do not have an unenforceable agreement to agree, but instead an enforceable agreement that has simply not been "evidenced" (to quote the contract) by a separate writing.  After all, the parties have already agreed on the main terms of the license:  the precise trademarks to which Cabela's is entitled, the price of the license ($1000), the length of the license (perpetual), and the nature of the license (exclusive).  Lindahl Decl. Ex. K ¶ 3; Mem. Supp. Mot. Prelim. Inj. 9 (acknowledging that "[t]he Trademarks subject to the [Contingent Trademark License] are specifically identified.").

Gander Mountain argues that, even if this is true, Cabela's cannot assert rights under the Contingent Trademark License until the parties execute a written agreement.  *See* Lindahl Decl. Ex. K ¶ 3 ("Such license shall be evidenced by a separate written agreement."); *Am. Nat'l Prop. and Cas. Co. v. Nersesian*, 689 N.W.2d 922, 928-29 (Wis. Ct. App. 2004) (where parties do not intend to be bound until a formal written agreement is executed, preliminary writings do not create a contract).  But, as noted, Cabela's has a good argument that it already has a legal right to a license to the trademarks.  Presumably, the Contingent Trademark License means *something*.

It is quite possible that, after the parties have the chance to take discovery and brief these issues on a reasonable schedule, the Court will be persuaded that, in fact, the parties have nothing more than an agreement to agree that is unenforceable under Wisconsin law.  Based on the current record, though, the Court cannot find that Gander Mountain has a likelihood of success on the merits.

---

[3]The Contingent Trademark License is governed by Wisconsin law.  Lindahl Decl. Ex. K ¶ 5(f).

*D.  Balance of Harms and the Public Interest*

Given that there is little or no threat of irreparable harm to Gander Mountain, the balance of harms is necessarily in Cabela's favor, as Cabela's seeks to protect the trademarks to which it may have legal rights.  The public interest is not a significant factor for either side.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion for preliminary injunction or temporary restraining order [Docket No. 23] is DENIED.


Dated: September 26, 2006                              s/Patrick J. Schiltz
                                                      Patrick J. Schiltz
                                                      United States District Judge